IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CENTRAL MIDWEST CARPENTERS**
**FRINGE BENEFIT FUNDS, INC.,**

    **Plaintiff,**

    v.

**WAI CONSTRUCTION GROUP, LLC,**

    **Defendant.**

Civil Action 2:25-cv-264

Magistrate Judge Kimberly A. Jolson

## **OPINION & ORDER**

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. 14). For the following reasons, the Court **GRANTS** the Motion. Judgment is entered in favor of Plaintiff in the amount of $341,615.61.

**I.    BACKGROUND**

Plaintiff Central Midwest Carpenters Fringe Benefit Funds, Inc. collects employee fringe benefits contributions on behalf of fringe benefit funds under Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, and the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. (Doc. 14 at 1–2; *see generally* Doc. 1 (Complaint)). It brings this action against Defendant WAI Construction Group, LLC ("WAI") seeking recovery of delinquent fringe benefits allegedly owed by WAI. (*See generally* Docs. 1, 14).

In 2018, WAI agreed to be bound by the terms of a collective bargaining agreement with the Central Midwest Regional Council of Carpenters' Union (the "CBA"). (Doc. 14-2). The contract—to which Plaintiff asserts it is a third-party beneficiary—requires WAI to pay fringe benefits, including pension and healthcare benefits, on behalf of its employees doing work covered

by the CBA.  (*See* Doc. 14-2 at 16–17).  In August 2024, Plaintiff informed WAI that it owed liquidated damages on late payment of fringe contributions from April through May 2024.  (Doc. 14-3 at 2).  The parties communicated over the next several months about repayment.  (Doc. 14-3 at 3–10).  But in December, Plaintiff discovered that WAI had not paid any fringe contributions since August.  (*Id.* at 9–10).  Specifically, WAI produced records showing their open invoices with Plaintiff totaled $362,783.19.  (Doc. 14-4).  And then Plaintiff's third-party administrator confirmed additional outstanding invoices.  (Doc. 14-5).  In total, WAI's delinquencies added up to $436,313.66.  (*Id.*).

Plaintiff attempted to resolve the delinquencies with WAI, but in early 2025, WAI ceased or was in the process of ceasing operations.  (Doc. 14 at 11).  Finding no recourse with WAI directly, Plaintiff filed this lawsuit alleging violations of the CBA and various provisions of ERISA, including 29 U.S.C. § 1145.  (Doc. 1 at 4).

Following service and WAI's answer, the parties participated in discovery.  (Docs. 4, 8, 11).  Plaintiff then filed a Motion for Summary Judgment, which WAI has not opposed.  (Doc. 14; *see also* Doc. 15 (putting WAI on notice that the Court would treat the summary judgment motion as unopposed and giving WAI a chance to respond)).  Plaintiff's Motion is ready for consideration.

## II.      STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

"Even when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011).  But "[i]t is not the duty of the district court . . . to search the entire record to determine whether there is a genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (Table) (6th Cir. 2000) (citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)).  Rather, "[t]he court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Id.* (citing *Guarino*, 980 F.2d at 410).

### III.  DISCUSSION

To resolve Plaintiff's unopposed Motion for Summary Judgment, the Court must consider two questions.  The first is whether Plaintiff has identified portions of the record that demonstrate the absence of a genuine issue of material fact as to WAI's liability under the applicable law.  The second is whether Plaintiff has identified the same as to the amount for which it says WAI is liable.  To both questions, the answer is yes.

### A.    Liability

Plaintiff contends WAI was obligated to make fringe benefit contributions under the CBA. ERISA states,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  And if an employer is delinquent in its contributions, ERISA authorizes enforcement action for the collection of fringe benefits by trustees of such plans.  29 U.S.C. § 1332(a); *Trs. of Painters Union Deposit Fund v. Ybarra Const. Co.*, 113 F. App'x 664, 667 (6th Cir. 2004).

Plaintiff is a third-party beneficiary of the CBA between Central Midwest Regional Council of Carpenters' Union and WAI, and, therefore, can enforce the terms of the CBA against WAI.  *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir. 1989) ("A pension or welfare trust is understood to be a third-party beneficiary of a CBA that receives contributions and issues payments negotiated by others.").  The CBA, on its face, requires WAI make certain fringe benefit fund payments and contributions.  (Doc. 14-2 at 16–17).  Plaintiff has submitted evidence that WAI failed to remit fringe payments from July 2024 through January 2025.  (*See* Doc. 14-6 (Defendant's reported unpaid hours by employee); Doc. 14-7 (wage sheets); Doc. 14-8 (amount owed by project)).  WAI submits no evidence or argument disputing Plaintiff's claims that it failed to make payments from July 2024 through January 2025.  Accordingly, Plaintiff has met its burden of demonstrating no genuine issue of material fact exists as to WAI's liability.  The Court finds that WAI breached its obligations under ERISA.

### B.    Relief

Having found liability, the Court turns to the question of relief. 29 U.S.C. § 1332(g)(2) provides,

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Under this provision, Plaintiff seeks a total of "$341,615.61, comprised of all unpaid fringe benefit contributions totaling $238,108.46, less any additional payments received from non-parties, together with liquidated damages assessed thereon, totaling $67,701.05, and actual attorney fees costs, and other collection costs mandated by 29 USC § 1132(g)(2) totaling $35,806.10, and such other sums as may become due to Plaintiff during the pendency of this action." (Doc. 14 at 15). The Court considers each amount in turn.

1. *Unpaid Contributions*

To support its ask for unpaid contributions, Plaintiff provides records from WAI detailing hours worked by each person on each project. (Doc. 14-6). Having not received fringe reports from WAI showing the actual amount owed, Plaintiff multiplied the hours worked for each person by their required wage for each job. (Docs. 14-7, 14-8). And added to that number, additional unreported hours discovered by speaking with "several foremen on projects worked by" WAI. (Doc. 14 at 11). In the end, Plaintiff calculated WAI is liable for $451,340.35 in unpaid fringe contributions for pay periods July 2024 through January 2025. (*See* Doc. 14-10 (declaration of

5

plan manager Darris Garoufalis)). Plaintiff filed claims on six projects for which Defendant properly secured project bonds and was able to secure payment from its bond claims for $213,231.89. (Doc. 14-9; *see also* Doc. 14 at 11 (specifying Plaintiff anticipates WAI's wage and hour bond totaling $75,000.00 "will be received shortly and, once received, will be applied to [WAI's] unpaid fringe contributions balance")). When the received bond payments are subtracted from the outstanding contributions, WAI's delinquency totals $238,108.46.

Again, WAI has not filed anything to rebut these numbers. Nor did WAI furnish Plaintiff with their fringe reports or records that might point to a different delinquency total. *See Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695 (6th Cir. 1994) ("Section 1059 [of ERISA] imposes a clear duty on an employer to maintain adequate records . . . [it] imposes 'a duty of responsibility and record keeping on employers with respect to all employees who are participants in an employee benefit plan.'" (citation omitted)). And, as stated, Plaintiff has produced evidence that WAI has not made the required contributions between July 2024 and January 2025.

Under Sixth Circuit precedent, the Court may rely on the unrebutted unpaid contribution amount submitted by Plaintiff. *See Wilson v. DM Excavating, LLC*, 844 F. App'x 827, 832 (6th Cir. 2021) ("[O]nce the funds produce evidence that the employer is not making contributions to the funds as required by its CBA, the burden shifts to the employer to produce records showing that the work performed was not within the union's craft jurisdiction.") (citation omitted)). Therefore, the Court finds Plaintiff is entitled to the delinquency total of $451,340.35, less the bond payments received and anticipated.

### 2. *Liquidated Damages*

Supporting its liquated damages ask, Plaintiff points to both ERISA and Plaintiff's collection policy. (Doc. 14 at 12). Under ERISA, liquated damages are recoverable if a plan provides for them "in an amount not in excess of 20 percent." 29 U.S.C. § 1132(g)(2)(C)(ii). Here, Plaintiff's collection policy provides that if an employer fails to submit contributions by the 15th day of the month following the month in which hours were worked, liquidated damages are to be assessed on the total delinquency. (Doc. 14-12 at 4). If, as here, contributions are over 90 days late, they are assessed at 15% of the outstanding total. (*Id.*). Consistent with ERISA and the governing documents, the Court finds Plaintiff is entitled to 15% of $451,340.35 (the total delinquency), which is $67,701.05.

### 3. *Attorney's Fees and Costs*

Finally, Plaintiff submits that it is entitled to $35,806.10 in attorneys' fees and costs. (Doc. 14 at 12); *see also* 29 U.S.C. § 1132(g)(2). In this case, ERISA requires the Court award Plaintiff such fees and costs. *See, e.g.*, *Loc. Union No. 5 Trs. of Bricklayers & Masons', Ohio Pension Fund v. Masonry Contracting Corp.*, No. 1:19CV1273, 2021 WL 243187, at *10–11 (N.D. Ohio Jan. 25, 2021) (noting that where judgment is awarded in favor of a plaintiff in an action under ERISA brought on behalf of a plan to enforce Section 1145, an award of fees and costs is mandatory). "The court determines the [attorneys'] fee amount using the 'lodestar' method, which begins by calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Boards of Trs. of Ohio Laborers Benefits v. Crowe Constr. Inc.*, No. 2:24-CV-3039, 2025 WL 2579485, at *5 (S.D. Ohio Sept. 5, 2025) (quoting *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1400 (6th Cir.

1995)) (citation modified). "If both inputs are reasonable, then 'the lodestar is presumed to be the reasonable fee to which counsel is entitled.'" *Id.* (citation omitted).

According to Plaintiff's counsel's declaration, rates for work performed for Plaintiff by senior partners is $275.00 per hour, by associate attorneys is $225.00 per hour, and by paralegals is $95.00 per hour. (Doc. 14-11 at 2). In total, counsel spent 43.1 hours of senior partner work, 97.4 hours of associate attorney work, and 12.6 hours of paralegal work. (*Id.* at 3; *see also id.* at 4–21 (itemized billing record)). Added up, the total lodestar amount is is $34,964.50.

This Court has found hourly rates similar to those claimed by Plaintiff reasonable for ERISA litigation. *See, e.g.*, *Boards of Trs. of Ohio Laborers Benefits v. Henry F. Teichmann, Inc.*, No. 2:23-CV-3047, 2024 WL 4448824, at *3 (S.D. Ohio Oct. 9, 2024); *Bd. of Trs. of Ohio Laborers Benefits v. Olive Leaf Landscaping, Inc.*, No. 2:22-CV-2799, 2023 WL 8031493, at *5 (S.D. Ohio Nov. 20, 2023). Plus, the Court finds the hours expended were reasonable. Though the Court may adjust the lodestar based on certain circumstances, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), an adjustment is not required here, especially considering WAI's failure to argue otherwise. Accordingly, the Court awards Plaintiff $34,964.50 in attorneys' fees.

Plaintiff further submits it expended $841.60 in costs. (Doc. 14-11 at 3 (identifying the filing fee, service, and the filing and service of mechanic's liens as relevant costs)). This request is also well taken. Consequently, Plaintiff is entitled to $35,806.10 in attorneys' fees and costs.

*** 

In sum, the Court finds that there are no genuine issues of material fact as to WAI's liability for the unpaid contributions, liquated damages, and attorney fees and costs owed to Plaintiff. Neither does the Court find a genuine issue of material fact as to the relief Plaintiff claims. The Court **GRANTS** Plaintiff's unopposed Motion for Summary Judgment (Doc. 14).

## IV. CONCLUSION

For the foregoing reasons the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Doc. 14). Judgment is entered in Plaintiff's favor in the amount of $341,615.61, comprised of all unpaid fringe benefit contributions totaling $238,108.46, less any additional payments received from non-parties; liquidated damages totaling $67,701.05; actual attorney fees and costs totaling $35,806.10; and such other sums as may become due to Plaintiff during the pendency of this action. The Court retains jurisdiction of this matter pending compliance with the Court's Orders. The Clerk is directed to close this case.

    IT IS SO ORDERED.

Date:  October 28, 2025                      /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE